Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 3099 | **DATE** | 5/3/2001 |
| **CASE TITLE** | EGE INTERNATIONAL vs. CASE CORP. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 5/17/2001 at 10:00 A.M...

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Summary judgment is granted and entered in favor of defendant and against plaintiff on Count I, but denied as to Count II. Count III is dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | |
| | No notices required. | | |
| | Notices mailed by judge's staff. | 5-7-01 date docketed | |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | docketing deputy initials | 67 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| DW | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EGE INTERNATIONAL FORWARDING
HOUSE, PLC,

    Plaintiff,

v.

CASE CORPORATION, a
Delaware Corporation,

    Defendant.

No. 98 C 3099
Judge James B. Zagel

DOCKETED
MAY 07 2001

## MEMORANDUM OPINION AND ORDER

Peter Ege and his wife Rosemary Ege owned a small company called Ege International Forwarding House, plc. ("Ege"). They were in the business of "freight forwarding," which means that they arranged for the transportation of various products (tractors, engines, hydraulic cylinders and the like) to and from destinations throughout the world. Ege brought this breach of contract action against Case Corporation ("Case"), a Delaware corporation headquartered in Racine, Wisconsin, with which Ege had a longstanding contractual relationship. Plaintiff's complaint consists of three counts. Count One is for breach of an alleged oral contract. Count Two is for promissory estoppel. Count Three is for equitable estoppel.

I.    **Facts**

For twenty-seven years, Ege operated as an outside freight forwarder for Case through its Racine, Wisconsin plant and at the manufacturing plant of Cases's English subsidiary ("Case UK") in Doncaster, England.[1] Two written contracts (dated April 29, 1993 and February 9,

---

[1] Case UK is not a party to this action. Judge Leinenweber previously denied defendant's motion to dismiss for failure to join Case UK as an indispensable party on the condition that plaintiff forego its right to sue Case UK.

1995) governed Ege's services as an outside freight forwarder, both of which were terminable by either side on thirty days notice. The subject of this lawsuit is a third contract– an alleged oral contract entered into in May 1994 – according to which Ege agreed that it would take on a new role as the "in-house" freight forwarder at the Doncaster plant. The circumstances surrounding the making of the oral contract are as follows:

Pierre Valcke, Director of Corporate Transportation for Case Europe Limited, invited Peter Ege and his wife to meet with him at Valcke's office in Le Plessis, France.[2] At the meeting, Valcke asked Ege to take over as in-house freight forwarder at the Doncaster plant.[3] The offer was conditional on Ege's having the capability to work on a "global level," as well as enough cash available to develop the communications network that would be required. He told the Eges that if their company became Case's in-house freight forwarder, it would result in "a long-term relationship." The specific duration of this relationship was not discussed. Valcke made it clear to the Eges that the final decision to employ Ege as in-house freighter would be made by defendant Case Racine.

Subsequently, Ege and Case exchanged several letters that made reference to the oral contract. A letter from a Case UK employee to Ege dated February 1995 confirmed that Ege had been recruited "to control all [Case's] import operations." A message from Pierre Valcke dated December 12, 1995 stated that the parties had agreed to split the cost of linking Ege with Case's

---

[2]Pierre Valcke was employed by Case Europe Limited, another of defendant's subsidiaries. He was hired by the Director of Transportation and Logistics at Case Racine. His salary came from Case France, but was reimbursed to Case France by defendant Case Racine.

[3]Defendant argues that plaintiff cannot rely on Valcke's alleged statements in opposing the motion for summary judgment because they are inadmissible hearsay. They are not hearsay. See F.R.E. 801(d)(2). Valcke was Case's agent and the challenged statements concerned a matter within the scope of his employment, made during the existence of that employment relationship.

2

communication systems. Again, neither party made any reference to the duration of the relationship.

Ege became the in-house freight forwarder at the Doncaster plant in July 1995. In preparation for its new position, Ege incurred expenses on the order of $350,000. It adapted its computer programming and software to meet Case's needs. It added two employees to its payroll. It added a second floor to a building it leased to create more space. In addition, the new responsibilities at Case UK caused Ege to forego well-established business relationships with other major customers.

Unbeknownst to the Eges, just as they were investing in new machinery and software, defendant Case was in the process of reorganizing its freight forwarding operations. It was decided that Case should hire a single entity to take care of all of Case's shipping needs, eliminating the need for in-house freight forwarders. In late 1995, Case conducted an RFP. It chose The Fritz Companies as its new "global logistics coordinator."

Peter Ege first learned about the relationship between Case and The Fritz Companies in January 1996. Pierre Valcke assured Ege that while the Fritz Companies would handle shipments from the United States, Ege would retain its position as in-house freight forwarder at the Doncaster plant.

Unfortunately, Valcke's assurances proved unfounded. In May 1996, Mr. Ege learned that Fritz personnel would be visiting the Doncaster plant for a "process review," and that unless Ege made a deal with Fritz, it would lose Case's business. On July 31, 1996, Peter Ege met with Dennis Schneider, Case's Director of Corporate Logistics. Mr. Ege asked him if Ege would be permitted to continue as an in-house freight forwarder. Schneider allegedly said: "The answer is

no. I sold the idea of a global provider to my management and you will lose the U.S. traffic by November, 1996." To make matters worse for Ege, Fritz succeeded in hiring away several Ege employees.

In August 1996, believing that Case had breached its agreement, Ege sent Case notice that Ege was terminating its contractual relationship. Thereafter, Ege suffered devastating financial losses, including cancellation fees for the lease on its building and cancellation fees for leased cars and equipment. Ege seeks monetary relief in the form of reliance costs, lost profits, and punitive damages.

## II. Choice of Law

Following briefing on the choice of law issue, I determined that English law applied to this action. Rather than litigate under the law of a forum of which neither party's counsel was familiar, Ege and Case agreed to a stipulation that the law of Wisconsin would govern their dispute.

## III. Breach of Contract

Case asserts a statute of frauds defense to Ege's breach of contract action. Under Wisconsin's statute of frauds, oral contracts for an indefinite duration are terminable at will or they are void for failure to comply with the requirement that contracts that cannot be completely performed within one year must be reduced to writing. See W.S.A. § 241.02.[4]

---

[4] W.S.A. § 241.02 states: "In the following case every agreement shall be void unless such agreement or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party charged therewith . . . Every agreement that by its terms is not to be performed within one year from the making thereof."

4

By definition, a contract to engage in a "long-lasting relationship" is not performed within one year of the making of the contract. There is no question that the alleged oral contract comes within the statute of frauds. Does an exception apply?

Plaintiff would have me find that the part performance doctrine trumps defendant's statute of frauds defense. See *Chirichillo v. Prasser*, 30 F. Supp.2d 1132 (E.D. Wisc. 1998)(citing *Toulon v. Nagle*, 67 Wis.2d 233 (Wis. 1975)) (under the part performance doctrine, notwithstanding the statute of frauds, an oral contract will be enforced if there has been such substantial performance that to hold it invalid would work a fraud or hardship).

The cases that plaintiff cites in support of its part performance argument are not on point. See, e.g., *Stan's Lumber, Inc. v. Fleming*, 538 N.W.2d 849 (Wis. Ct. App. 1995); *Spensley Feeds, Inc. v. Livingston Feed & Lumber, Inc.*, 381 N.W.2d 601 (Wis. Ct. App. 1985). They concern the sale of goods or sale of lands which involve different statutes of fraud (e.g. W.S.A. §706.04) with their own statutory exceptions for part performance. Here, the applicable statute of frauds is W.S.A. § 241.02, a statute which does not contain any such exception.

The Seventh Circuit has interpreted W.S.A. § 241.02 in the context of indefinite contracts for employment and found that the plain language of the statute of frauds controlled. See *Landess v. Borden, Inc.*, 667 F.2d 628 (7th Cir. 1981)(milk hauler's implied contract to transport farmers' milk was for an indefinite duration, and thus, void or terminable at will). See also *Fischer v. First Chicago Capital Markets, Inc.*, 195 F.3d (7th Cir. 1999)(finding that under Illinois's identical statute of frauds, the partial performance exception was not applicable to a normal employment contract for an "ongoing consulting relationship"). Accordingly, I find that the plain language of

5

W.S.A. § 241.02 is fatal to plaintiff's part performance argument. The oral contract was either void or terminable at will. Plaintiff cannot recover for breach of contract.

## IV. Promissory Estoppel

The dismissal of plaintiff's breach of contract claim is not fatal to his promissory estoppel claim. A contract otherwise void under Wisconsin's statute of frauds can be enforced if a change in plaintiff's position would result in fraud, injustice, or undue hardship. See *Superview Network, Inc. v. SuperAmerica* 827 F. Supp. 1392 (E.D. Wis. 1993):

> "Promissory estoppel is an alternative basis to breach of contract for seeking damages from the breakdown of a relation. If there is a promise of a kind likely to induce a costly change in position by the promisee in reliance on the promise being carried out, and it does induce such a change, he can enforce the promise even though there was no contract." *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998)(citing *U.S. Oil v. Midwest Auto Care Services, Inc.*, 150 Wis.2d 80 (1989)).

In the case of *Hoffman v. Red Owl Stores, Inc.*, 133 N.W.2d 267 (Wis. 1965), the Wisconsin Supreme Court established three conditions for the application of promissory estoppel:

> (1) Was the promise one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promissee?
> (2) Did the promise induce such action or forbearance?
> (3) Can injustice be avoided only by enforcement of the promise?

The burden is on Ege, which seeks to enforce the contract, to demonstrate the existence of facts which take the case out of Wisconsin's statute of frauds. *Superview Network*, 827 F. Supp. at 1394.

Ege says that a promise for a "long-lasting relationship" is the sort of promise which Mr. Valcke should reasonably have expected to cause Ege to make substantial investments. I agree. A nearly identical set of circumstances came before the Seventh Circuit in *Werner v. Xerox Corp.*, 732 F.2d 580 (7th Cir. 1984). There, defendant's agent orally promised the plaintiff that he would

6

become the principal supplier of a certain component part. In reliance on this promise, plaintiff leased additional office space and upgraded his machinery, only to be told that defendant no longer required his services. The Seventh Circuit upheld the district court's finding that under Wisconsin law defendant's actions induced reliance since defendant's agent "consistently and actively encouraged [plaintiff] to set up [a new facility]," and "approved of [plaintiff's] progress toward that goal." 732 F.2d at 582.

The same is true here if I accept, as I must, the credibility of plaintiff's evidence and the favorable inferences which can be drawn from it. In the case at hand, there is evidence in the record which suggests that Mr. Valcke knew that Ege was poised to invest in a new communications system. Plaintiff claims that in addition it spent large sums on machinery, salaries, and such. If proven, these expenses would amount to the sort of "substantial and definite" reliance required by *Red Owl*. Any dispute about how much Ege spent and whether the expenses were undertaken before or after the alleged oral contract is for the trier of fact.

Case attempts to distinguish *Werner* on the ground that there the promises at issue were clear and definite, whereas here, the alleged promise for a "long-term relationship" is inherently unambiguous. Just because certain terms of a contract are indefinite, however, does not require dismissal of a promissory estoppel claim. See *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998)(plaintiff who was orally promised an ownership interest in a restaurant could recover damages under theory of promissory estoppel even though exact terms of agreement were uncertain). For purposes of promissory estoppel, the indefinite duration of the contract is only relevant insofar as it supports defendant's argument that the conversations between Valcke and the Eges were really in the nature of preliminaries–an agreement to agree at some future date.

7

See, e.g., *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 817 (7th Cir. 1987)(under Wisconsin law, agreements to agree do not create binding obligations).

In this particular case, however, the evidence can support an inference that the oral contract was more than just an agreement to agree. The best evidence of this is, of course, the fact that Ege did become defendant's in-house freight forwarder in July 1995.

I am denying defendant's motion for summary judgment on the promissory estoppel claim. If the facts as plaintiff alleged them are true, defendant solicited plaintiff to assume a new position, stood by while plaintiff incurred large losses which it knew it could not recover, then dismissed plaintiff when the exigency of their business demanded it. This is the sort of situation for which the doctrine of promissory estoppel was created.

## V. Equitable Estoppel

The doctrine of equitable estoppel is ill-defined under Wisconsin law. In most instances, Wisconsin courts have stated that there are three elements to equitable estoppel: (1) action or inaction which induces, (2) reliance by another, (3) to his detriment. At times, however, an additional requirement of "false representation or concealment of material facts" is added. See *Triple Interest, Inc. v. Motel 6*, 414 F. Supp. 589 (W.D. Wis. 1976). Moreover, some courts have considered equitable estoppel to be an affirmative defense while others have treated it as a distinct cause of action. My reading of the case law leads me to conclude that promissory estoppel is simply a more particularized form of equitable estoppel which applies when the record contains

an allegation of a promise which induced detrimental reliance. Promissory estoppel is the appropriate cause of action here. I dismiss Count Three.

## VI. Damages

Defendant's final argument is that since plaintiff terminated all contracts by letter of August 7, 1996, it relinquished all claims for damages. The argument does not convince me. Defendant does not dispute that its agent, Mr. Schneider, informed Mr. Ege in no uncertain terms that Ege would lose all of Case's business by November 1996. Accepting plaintiff's evidence in the light most favorable to it, this is enough to constitute anticipatory breach. See *Bank One Milwaukee v. Williams Bay Trading Co.*, 620 N.W.2d 482 (Wis. Ct. App. 2000)(quoting *Wisconsin Dairy Fresh, Inc. v. Steel & Tube Products Co.*, 122 N.W.2d 361 (Wis. 1963)).

Plaintiff's claim for punitive damages is dismissed. Plaintiff's claims all sound in contract and punitive damages are not recoverable in contract actions.

To conclude, I grant defendant's motion for summary judgment on Count I (breach of contract) and Count III (equitable estoppel). I deny summary judgment on Count II (promissory estoppel).

ENTER:

James B. Zagel
United States District Judge

DATE: MAY - 3 2001

9